P.F. v M.B. (2026 NY Slip Op 50396(U))

[*1]

P.F. v M.B.

2026 NY Slip Op 50396(U)

Decided on March 25, 2026

Supreme Court, Queens County

Dunn, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 25, 2026
Supreme Court, Queens County

P.F., Plaintiff,

againstM.B. and CARMELA CALCETAS, Defendants.

Index No. 705519/2023

For the DefendantsM.B., Pro SeFor the PlaintiffVeridian Legal P.C.23 West 73rd Street, Suite 102New York, New York 10023By: Daniel S. Szalkiewicz, Esq.

Scott Dunn, J.

The e-filed papers listed by NYSCEF Doc. Nos. 81, 86-94 were read on the motion of the Defendant M.B. ("Defendant M.B."), for a default judgment against Plaintiff P.F. ("Plaintiff")[FN1]
on Defendant M.B.'s counterclaims; and on the cross-motion of Plaintiff pursuant to CPLR 3012(d) to compel Defendant M.B. to accept Plaintiff's answer to the counterclaims and for dismissal of the counterclaims pursuant to CPLR 3211(a)(7).
I. Background
For a period of approximately one year, Plaintiff and Defendant M.B. allegedly were engaged in a serious romantic relationship while Defendant M.B. was married to Defendant [*2]Carmela Calcetas ("Calcetas"). Plaintiff also alleges that Defendants, in concert or one at the direction of the other, and without Plaintiff's consent, disseminated intimate photographs and videos of Plaintiff to Plaintiff's mother, business associates, and to a third party who had previously agreed to purchase Plaintiff's business. Defendants allegedly also used social media and emails to message and threaten Plaintiff, all of which allegedly caused damages to Plaintiff.
Based upon these allegations, and others, in March 2023, Plaintiff commenced this action against Defendant M.B. and Calcetas asserting six causes of action, alleging: (i) violation of New York City Administrative Code § 10-180; (ii) violation of New York State Civil Rights Law § 52-b; (iii) intentional infliction of emotional distress; (iv) intentional interference with prospective business relations; (v) tortious interference with contract/perspective economic advantage; and (vi) aiding and abetting the foregoing.
On May 2, 2023, Calcetas filed an answer with crossclaims. On May 22, 2023, Defendant M.B. filed an answer to Calcetas' crossclaims. On June 12, 2023, Defendant M.B. moved to dismiss the complaint pursuant to CPLR 3211(a)(7). On June 23, 2023, Plaintiff filed an amended complaint. On July 7, 2023, Calcetas filed an answer and crossclaims to the amended complaint. On July 27, 2023, Defendant M.B. moved to dismiss the amended complaint pursuant to CPLR 3211(a)(7). 
By Order filed September 27, 2024, the Court (Hom, J.), granted in part, and denied in part, Defendant M.B.'s motion to dismiss (Doc. No. 51). In sum, Defendant M.B.'s motion to dismiss was granted solely to the extent that the first cause of action, alleging violation of New York City Administrative Code § 10-180, was dismissed. Accordingly, causes of action two through six remain. Notice of Entry of the Order was served the same day (Doc. No. 52).
On October 15, 2024, counsel for Defendant M.B. moved by order to show cause to be relieved as counsel. The order to show cause was signed by the Court on October 29, 2024, and all proceedings were stayed (Doc. No. 55). By Order filed January 13, 2025, the Court granted the motion to withdraw as counsel and the proceedings remained stayed until 30 days after the filing of proof of service to allow Defendant M.B. time to obtain new counsel (Doc. No. 58). Proof of service was filed on January 15, 2025 (Doc. No. 60), so the stay was to be lifted by its terms on February 14, 2025. On February 13, 2025, Defendant M.B. moved by order to show cause to extend the stay to allow additional time to obtain counsel. On February 20, 2025, the Court signed the order to show cause and again stayed the proceedings (Doc. No. 62). The stay was lifted on March 18, 2025, when the Court ultimately denied Defendant M.B.'s motion for a further stay.
On March 19, 2025, Defendant M.B. filed an application for the waiver of court costs, fees, and expenses based on his claim of insufficient means to pay such costs. On March 28, 2025, the application was denied by the Court without prejudice because the application was missing certain documentation (Dufficy, J.; Doc. No. 67). In denying the application the Court also noted (albeit on a form document) that the "case cannot proceed unless the above missing/corrected papers are filed with the court" (Doc. No. 67).
On April 3, 2025, Defendant M.B. filed an answer to the amended complaint, affirmative defenses, and counterclaims (Doc. No. 72). Defendant M.B. asserted three counterclaims: (i) unlawful disclosure of intimate images under New York City Administrative Code § 10-180; (ii) unlawful dissemination or publication of intimate images under New York State Civil Rights Law § 52-b; and (iii) battery through poisoning/non-consensual drugging.
Also on April 3, 2025, Defendant M.B. renewed his application for the waiver of court costs, fees, and expenses. In the application, Defendant M.B. avers that he "intend[s] to assert certain rights and defenses in this case, and I cannot proceed with my case unless this application is granted" (Doc. No. 70 ¶ 11). On April 23, 2025, the Court declined the application without prejudice upon renewal by notice of motion pursuant to CPLR 1101(c) (Doc. No. 73). On May 20, 2025, Defendant M.B. moved by notice of motion for waiver of court costs, fees, and expenses, and again stating that he cannot proceed with his case unless the application is granted (Doc. No. 76 ¶ 11). On August 21, 2025, the motion was granted as unopposed (Doc. No. 85).
On July 25, 2025, Defendant M.B. filed the instant motion (Seq. No. 7), in the main, seeking default judgment against Plaintiff on his counterclaims.[FN2]
Four days later on July 29, 2025, Plaintiff filed an answer to Defendant M.B.'s counterclaims (Doc. No. 82). On September 25, 2025, Plaintiff filed opposition to Defendant M.B.'s motion for a default judgment and cross-moved pursuant to CPLR 3012(d) to compel Defendant M.B. to accept Plaintiff's answer to the counterclaims and for dismissal of the counterclaims pursuant to CPLR § 3211(a)(7).
II. Motion for Default Judgment/Cross-Motion to Compel
To avoid the entry of a default judgment, a party who has failed to appear or answer the complaint must provide a reasonable excuse for the default and demonstrate a potentially meritorious defense to the action (see King v 105-02 Forest Hills, LLC, 233 AD3d 939, 940 [2d Dept 2024]; Browne v Lyft, Inc., 219 AD3d 443, 444 [2d Dept 2023]; Yuxi Li v Caruso, 161 AD3d 1132, 1133 [2d Dept 2018]; Kim v Strippoli, 144 AD3d 982, 983 [2d Dept 2016]). A party who seeks to compel the acceptance of late service of an answer is required to make a similar showing (see Corvera v Prime Source Dev., LLC, 172 AD3d 1161, 1163 [2d Dept 2019]). "CPLR 3012 (d) provides that a court may extend the time to appear or plead, or compel the acceptance of an untimely pleading, 'upon such terms as may be just and upon a showing of reasonable excuse for delay or default'" (Kim, 144 AD3d at 983, quoting CPLR 3012 [d]). "Whether there is a reasonable excuse for a default is a discretionary, sui generis determination to be made by the court based on all relevant factors, including the extent of the delay, whether there has been prejudice to the opposing party, whether there has been willfulness, and the strong public policy in favor of resolving cases on the merits" (Harcztark v Dr. Variety, Inc., 21 AD3d 876, 876-77 [2d Dept 2005]). Ultimately, the "determination of what constitutes a reasonable excuse lies within the discretion of the trial court" (Corvera, 172 AD3d at 1163). 
Here, "given the totality of all relevant factors" (Browne, 219 AD3d at 444), the Court denies Defendant M.B.'s motion for a default judgment and related relief, and grants Plaintiff's cross-motion to compel the acceptance of Plaintiff's answer to the counterclaims filed on July 29, 2025 (Doc. No. 82).
First, Plaintiff's delay was not willful and was relatively short.[FN3]
Counsel tookpersonal [*3]responsibility for the delay and explained that the the delay was caused by inadvertent law office calendar failure and upon counsel's reliance on the language in Defendant M.B.'s fee waiver application that he "cannot proceed with [his] case unless this application is granted" (Doc. 87 ¶ 26; see also fee waiver applications Doc. No. 70 and 76 ¶ 11). Defendant M.B.'s waiver application was not granted until August 21, 2025. Nevertheless, Defendant M.B. filed this motion before the fee waiver application was granted, so Plaintiff filed her answer to the counterclaims four days later. Moreover, Plaintiff has shown no intent to abandon the action. Second, any prejudice to Defendant M.B. is minimal, if any at all exists. Indeed, it appears that Defendant M.B. himself was late in serving an Answer [FN4]
and the Court provided Defendant M.B. with several stays to afford him time to find counsel. Third, Plaintiff has established a potentially meritorious defense of falsity and/or consent to the counterclaims (Doc. No. 88) [FN5]
and such claims are further called into question by the second through sixth causes of action asserted by Plaintiff in her complaint against Defendant M.B. which survived Defendant M.B.'s motion to dismiss (Doc. No. 51). Finally, given the nature of the claims, counterclaims, and defenses in this action which appear uniquely intertwined with issues of fact concerning coercion and consent, the Court finds that the strong public policy in favor of resolving cases on the merits tips the scale in favor of denying entry of a default judgment and compelling acceptance of Plaintiff's answer to the counterclaims (see Browne, 219 AD3d 443; Yuxi Li, 161 AD3d 1132; Kim, 144 AD3d 982; Nowakowski v Broadway Stages, 179 AD3d 824 [2d Dept 2020]; Ferreira v Singh, 176 AD3d 782 [2d Dept 2019]; Franco Belli Plumbing and Heating and Sons, Inc. v Imperial Dev. & Const. Corp., 45 AD3d 634 [2d Dept 2007]).
III. Motion to Dismiss
"On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Antoine v Kalandrishvili, 150 AD3d 941, 941 [2d Dept 2017]). 
Plaintiff urges dismissal of Defendant M.B.'s counterclaims for violation of New York City Administrative Code § 10-180 and New York State Civil Rights Law § 52-b, contending that Plaintiff's dating relationship precludes the requisite intent to cause harm (Doc. No. 87 ¶ 45).
"Administrative Code § 10-180[b][1] creates both criminal and civil remedies for a victim of what is colloquially referred to as 'revenge porn"' (Litwin v Hammond Hanlon Camp, LLC, 65 Misc 3d 1202(A), 2019 WL 4459165 [Sup Ct, New York County 2019]). As relevant here, New York City Administrative Code § 10-180[b][1] provides that:
"It is unlawful for a covered recipient to disclose an intimate image, without the depicted individual's consent, with the intent to cause economic, physical or substantial emotional harm to such depicted individual, where such depicted individual is or would be identifiable to another individual either from the intimate image or from the circumstances under which such image is disclosed" (emphasis added).[FN6]Civil Rights Law § 52-b provides that:"[a]ny person depicted in a still or video image . . . regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated or published, or threatened to disseminate or publish, such still or video image, where such image: a. was taken when such person had a reasonable expectation that the image would remain private; and b. depicts (i) an unclothed or exposed intimate part of such person; or (ii) such person engaging in sexual conduct . . . and c. was disseminated or published, or threatened to be disseminated or published, without the consent of such person."Here, contrary to Plaintiff's contention, affording the counterclaims a liberal construction as the Court must on a motion to dismiss under CPLR 3211, Defendant M.B. sufficiently alleges that Plaintiff acted with the requisite intent to cause the requisite harm. "A result is intended if the act is done with the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue" (Waterbury v New York City Ballet, Inc., 205 AD3d 154, 159 [1st Dept 2022] [internal quotations marks and citation omitted]). Here, according Defendant M.B. every favorable inference and deeming the pleading to have "allege[d] whatever may be implied from its statements by reasonable intendment" (Dunn v Gelardi, 59 AD3d 385, 386 [2d Dept 2009]), the Court finds that Defendant M.B. has sufficiently alleged the requisite intent, as Defendant M.B. alleges that the offending [*4]videos/images remained viewable and accessible to the public for at least one year after Defendant M.B. sent cease and desist letters and take down notices to Plaintiff following the termination of their relationship (Doc. No. 72 ¶ 172). Moreover, although Defendant M.B. appears to concede that Plaintiff's conduct of disseminating "his intimate images" on Plaintiff's "personal pornographic website platforms" was motivated, in part, for her own financial gain (Doc. No. 94, p. 11 of 15), Defendant M.B.'s allegations also assert that Plaintiff engaged in "an extensive grooming and extortion scheme," involving drugs and explicit sexual videos, in part, to manipulate Defendant M.B. into "providing [Plaintiff] with money" (Doc. No. 72 ¶¶ 143-144). Further, Defendant M.B. alleges economic harm as a result of Plaintiff's conduct in that her conduct caused Defendant M.B. to have difficulties at work, contributing to his inability to continue at his job and ultimate separation from his employer (Doc. No. 72 ¶ 174).
Waterbury v New York City Ballet, Inc. (205 AD3d 154), is instructive. In Waterbury, the First Department found that the allegations of the complaint stated a claim for breach of Section 10-180 of the New York City Administrative Code. In Waterbury, the plaintiff alleged that the defendant knew she did not want him to take or share intimate images of her but that he did it anyway and then shared the images with his friends. The Court explained that "[e]ven assuming that secrecy would negate the intent to cause emotional harm, it is not clear as a matter of law that [the defendant] intended to keep the photos secret from [the plaintiff] and the public" and that "[a]t this pre-discovery stage, these allegations are sufficient to raise an inference of an intent to cause economic or substantial emotional harm" (Waterbury, 205 AD3d at 159-160).
Here too, the counterclaims, at this pre-discovery stage sufficiently allege that Plaintiff disclosed or published the offending videos/images with the "intent to cause economic, physical or substantial emotional harm" to Defendant M.B. (Administrative Code of the City of New York § 10-180[b]) or "for the purpose of harassing, annoying or alarming" Defendant M.B. (Civil Rights Law § 52-b).[FN7]

Finally, Plaintiff urges dismissal of Defendant M.B.'s claim for battery through poisoning/non-consensual drugging. "To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent" (Bastein v Sotto, 299 AD2d 432, 433 [2d Dept 2002]; see also Kuznitz v Funk, 187 AD3d 1006, 1006 [2d Dept 2020]; Gutierrez v McGrath Mgt. Services, Inc., 152 AD3d 498, 500 [2d Dept 2017]; Cotter v Summit Sec. Services, Inc., 14 AD3d 475, 475 [2d Dept 2005]).
Justice Cardozo explained over a century ago that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body" (Schloendorff v Socy. of New York Hosp., 211 NY 125, 129 [1914], abrogated on other grounds Bing v Thunig, 2 NY2d 656 [1957]). In recognition of this right, courts have held that "a doctor who performs a medical procedure on a patient without any consent, in the absence of an emergency, is liable for battery" (Thaw v N. Shore Univ. Hosp., 129 AD3d 937, 943 [2d Dept 2015] [Skelos, J., concurring in part and dissenting in part]). Similarly, although there appear to be few, if any, [*5]reported cases in New York directly on point, it is not disputed here, and it appears plain from the earliest days of America's legal system, that a civil claim for battery will lie where a person allegedly drugs or poisons another's food without their consent (see Livingston v Griffin, 2007 WL 1500382, *11 [ND NY, May 21, 2007]; see also Restatement (Third) of Torts: Inten. Torts to Persons § 101 DD [2014] ["Clearly one commits a battery by secretly placing a poison in another's drink that one expects the other to consume"]; Restatement Second Torts § 53, Illustration 1 ["A offers B candy which contains a poisonous drug. B consents to eat the candy in ignorance of the fact that it is poisoned, and is made ill. A is subject to liability to B"]; Snouffer v Snouffer, 1993 WL 248603, *4 [Ohio Ct App, July 9, 1993] ["The administration of poison to a person generally constitutes a battery"]); Mink v Univ. of Chicago, 460 F Supp 713, 718 [ND Ill 1978] [holding that since injecting medicine into a plaintiff's arm to which she had not consented amounts to an offensive battery, giving her a pill to which she did not consent should likewise be a battery]; Genay v Norris, 1 SCL 6, 1784 WL 26 [SC Com Pl Gen Sess 1784] [approving award of punitive damages because putting "cantharides" into the "plaintiff's glass or tumbler" of wine from which plaintiff drank "was a very wanton outrage").[FN8]
 
Here, Plaintiff urges dismissal of the battery claim on the sole contention that the documentary evidence demonstrates that Defendant M.B. consented to being drugged by Plaintiff (Doc. No. 87 ¶ 48). In support of her motion, Plaintiff relies on email and text message exchanges between the parties. Plaintiff's argument fails, however, as "[l]etters, emails, and affidavits are not documentary evidence" for purposes of a dismissal motion under CPLR 3211 (Old Republic Natl. Tit. Ins. Co. v 1152 53 Mgt., LLC, 227 AD3d 824, 827 [2d Dept 2024], quoting Bath & Twenty, LLC v Fed. Sav. Bank, 198 AD3d 855, 856 [2d Dept 2021]). Accordingly, that branch of Plaintiff's motion seeking to dismiss the counterclaim for battery must be denied.
IV. Conclusion
Based on the foregoing, it is hereby:
ORDERED that Defendant M.B.'s motion for a default judgment is denied; and it is further
ORDERED that the branch of Plaintiff's cross-motion pursuant to CPLR 3012(d) to compel acceptance of the answer to the counterclaims is granted and the Answer to the Counterclaims filed on July 29, 2025 (Doc. No. 82) is deemed served and accepted on that date; and it is further
ORDERED that the branch of Plaintiff's cross-motion to dismiss the counterclaims is denied. 
This constitutes the Decision and Order of the Court.
Dated: March 25, 2026Long Island City, New YorkSCOTT DUNN, J.S.C.

Footnotes

Footnote 1:At the time of the commencement of this action, Plaintiff moved for an order seeking leave to proceed in this action using a pseudonym instead of with her true identity. By Order filed August 21, 2023, the Court (Hom, J.), granted Plaintiff's motion (Doc. No. 40).

Footnote 2:Also on July 25, 2025, Defendant M.B. moved by order to show cause for an order seeking permission to proceed in this matter using his initials M.B. (Seq. No. 8; Doc. No. 80). By Order dated March 25, 2026, issued on the same day as this Order, the Court granted Defendant M.B.'s motion to the extent set forth therein.

Footnote 3:By Defendant M.B.'s own account, the Answer to the Counterclaims was served less than three months late (Doc. No. 94, p. 7 of 15 (see Yuxi Li, 161 AD3d at 1134 [denying default judgment and compelling acceptance of an answer served "less than three months after the time period in which to answer had expired]").

Footnote 4:This matter was tangentially addressed by the parties' papers. Based upon the limited briefing on the issue, it appears to the Court that Defendant M.B. filed his answer and counterclaims late. Defendant M.B. did not file his answer and counterclaims until April 3, 2025 (Doc. No. 72). On September 27, 2024, Plaintiff served Defendant M.B. with Notice of Enry of the Order relating to Defendant M.B.'s dismissal motion. Accordingly, pursuant to CPLR 3211(f), Defendant M.B.'s time to answer expired—10 days later—on October 7, 2024 (see Doc. No. 87, p. 5). The Court further notes that the first stay in this action was not issued until October 29, 2024 (Doc. No. 55), and, in any event, the application seeking the first stay was not filed until October 15, 2024 (Doc. No. 53), after the time to answer already expired.

Footnote 5:A party "is not required to establish the validity of its defense as a matter of law in order to obtain vacatur of its default in answering, but only need establish that the defense is potentially meritorious" (Corvera, 172 AD3d at 1163).

Footnote 6:A "covered recipient" is defined as "an individual who gains possession of, or access to, an intimate image from a depicted individual, including through the recording of the intimate image" (Administrative Code of the City of New York § 10-180[a]). A "depicted individual" is defined as an "individual depicted in a photograph, film, videotape, recording or any other reproduction of an image that portrays such individual (i) with fully or partially exposed intimate body parts, (ii) with another individual whose intimate body parts are exposed, as recorded immediately before or after the occurrence of sexual activity between those individuals, or (iii) engaged in sexual activity" (id.). Plaintiff does not dispute on this motion that Defendant M.B. asserted that she is a "covered recipient" or that Defendant M.B. and the images at issue fall within the definition of "a depicted individual."

Footnote 7:Whether Defendant M.B.'s claims "will later survive a motion for summary judgment, or whether [Defendant M.B.] will ultimately be able to prove [his] claims, of course, plays no part in the determination of a pre-discovery CPLR 3211 motion to dismiss" (Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 38 AD3d 34, 38 [2d Dept 2006]).

Footnote 8:Genay v Norris was recently cited by the Supreme Court of the United States for the proposition that "American courts had awarded punitive (or exemplary) damages from the Republic's earliest days" (The Dutra Group v Batterton, 588 US 358, 371 [2019]).